```
 1                   UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3

 4   UNITED STATES OF AMERICA,          )
                                        )
 5                     Plaintiff,       )  Criminal Action
                                        )
 6   vs.                                )  No. 09-10205-GAO
                                        )
 7   JOSEPH LAFATA,                     )
                       Defendant        )
 8                                      )

 9

10   BEFORE:  THE HONORABLE GEORGE A. O'TOOLE, JR.

11                          SENTENCING

12

13

14
                 John Joseph Moakley United States Courthouse
15                         Courtroom No. 9
                           1 Courthouse Way
16                         Boston, MA 02210

17
                          September 28, 2010
18                            2:22 p.m.

19

20

21

22

23                       Valerie A. O'Hara
                       Official Court Reporter
24       John Joseph Moakley United States Courthouse
                  1 Courthouse Way, Room 3204
25                      Boston, MA 02210
                  E-mail: vaohara@gmail.com
```

1    APPEARANCES:

2    For The United States:

3        United States Attorney's Office, by THOMAS E. KANWIT,
     ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way, Suite 9200,
4    Boston, Massachusetts  02110

5    For the Defendant:

6        Federal Public Defender Office, by STYLIANUS SINNIS, ESQ.,
     51 Sleeper Street, Boston, Massachusetts 02110.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              PROCEEDINGS

2          THE CLERK:  All rise.  United States District Court

3     for the District of Massachusetts, court is now in session.

4     Please be seated for sentencing, the case of United States of

5     America vs. Joseph Lafata, Docket 09-10205.

6          Would counsel please identify yourself for the record.

7          MR. KANWIT:  Good afternoon, your Honor, Thomas Kanwit

8     for the United States.

9          MR. SINNIS:  Good afternoon, your Honor, Stelio Sinnis

10    for Mr. Lafata.

11         THE COURT:  All right.  Mr. Lafata appears for

12    sentencing on his conviction of two counts of bank robbery,

13    those convictions coming upon his entry of a plea of guilty to

14    each count.  I have a final pre-sentence report from the

15    probation office, and I also have a sentencing memorandum filed

16    on behalf of the defendant.

17         I think there's no memorandum from the government; is

18    that right?

19         MR. KANWIT:  That is correct, your Honor.

20         THE COURT:  Okay.

21         MR. SINNIS:  And, your Honor, you have the attachment

22    to that sentencing.

23         THE COURT:  I have the attachment, and I've read it.

24         MR. KANWIT:  Your Honor, just for the record, this

25    might be the appropriate point, the government objects to when

1    it received the psychological evaluation of the defendant.  We

2    obviously are making something of a soft objection in that I

3    did not ask for a continuance, but I do want it on the record

4    that it's very difficult to respond to a report of that length

5    when it's received approximately five days before sentencing.

6            THE COURT:  Okay.  The soft objection is noted.

7            MR. KANWIT:  Thank you.

8            THE COURT:  Well, one of the factors to be considered

9    in deciding on an appropriate sentence under Section 3553(a) is

10   the advice that emerges from an application from the

11   guidelines.  The pre-sentence report is customary, proposes an

12   application of the guidelines, and, therefore, a series of

13   guideline ranges.  Is there any issue to be resolved with

14   respect to the application of the guidelines as suggested by

15   the PSR?

16           MR. KANWIT:  Not from the government's side, your

17   Honor, and I would note that the government filed today a

18   motion for the third point for acceptance.

19           MR. SINNIS:  No objection to the guideline calculation

20   as done by probation.

21           THE COURT:  Okay.  Well, I reviewed it, and I think

22   it's also an accurate application of the guidelines.  It yields

23   with respect to incarceration, in particular, it yields a

24   sentencing guideline range of 151 to 188 months, that range

25   being largely attributable to Mr. Lafata's status as a career

1    offender under the guidelines.

2         So, with that established, I invite you each to make

3    your specific recommendations in light of the statutory factors

4    taken as a whole.  Mr. Kanwit.

5         MR. KANWIT:  Your Honor, as always, I'm going to be

6    candid with the Court.  I am torn about the recommendation to

7    make in this case because what you have on the one hand, sort

8    of from a hard-nose prosecutorial standpoint, is we have a

9    defendant who is indeed very much a career offender, both

10   literally and in a broader sense of what it means to be a

11   career offender.

12        Mr. Lafata has spent very little of his adult life not

13   in trouble.  Sometimes in cases like this what I do is I put

14   together a graph that shows the dates of conviction, the

15   sentence imposed and served and the amount of time out of

16   prison, and it's usually quite startling.

17        Normally, in a case like this, although this might be

18   a little bit more extreme than some, there's very little time

19   spent outside of prison, and without having done that graph, I

20   can't make any hard representations about that, but it's fairly

21   clear, and I think the PSR, in fact, makes the conclusion that

22   Mr. Lafata has not spent a significant amount of his adult life

23   outside of the judicial system.

24        So that makes me sort of institutionally argue for a

25   long sentence.  It suggests that this is not an individual that

1   will do well in society.  The psychological report that was

2   submitted by the defendant suggests that he does not at this

3   time have the appropriate coping mechanisms to do well in

4   society as a whole.

5        However tragic the history behind that, what may have

6   led to that is, the fact remains that I think fairly said,

7   Mr. Lafata presents a continuing danger of additional crime to

8   society.

9        Now, the reason why I'm torn is because, in fact, that

10  psychological history is horrific.  This is a guy, a young man,

11  I may indulge myself for a moment, a kid who never got a

12  chance.  That's a problem for society as a whole.  It's not

13  really my role as a prosecutor to try to correct that in the

14  sentence.  I don't even know how to fully take that into

15  account in the sentence.

16       I don't know Mr. Lafata.  I don't know what his chance

17  of rehabilitation is if he gets some of the services that are

18  recommended by Dr. Mendoza.  I want to be optimistic that he

19  has some chance of recovering a useful life, but as a

20  prosecutor, I'm very concerned about that.

21       My recommendation is a compromised recommendation.  It

22  is, I think, an optimistic recommendation, but I'm going to

23  recommend a sentence of ten years.  I think if this defendant

24  is not rehabilitated in ten years, he's not going to be

25  rehabilitated in twelve and a half years, which I believe is

1    the low end of the guidelines.  It would be true if he's not

2    rehabilitated in ten years, society would be better served if

3    he's incarcerated for another two and a half years, but I

4    prefer to be a bit optimistic and take an approach which gives

5    him another chance.

6            Ten years is not a small sentence, even though it's a

7    below guideline sentence.  One in my position could have easily

8    argued for something below the low end of the guidelines.

9    Frankly, I think many of my colleagues might do that.  There's

10   not a lot to encourage my optimism here, but having said that,

11   my recommendation is for ten years.

12           THE COURT:  Okay.  Mr. Sinnis.

13           MR. SINNIS:  Thank you, your Honor.  Thank you,

14   Mr. Kanwit.  There can be no doubt that, and I'm not going to

15   try to, and I know that Mr. Lafata in his comments is not going

16   to try to minimize his criminal history.  It's bad.  There's no

17   way of sugar-coating that fact.  Mr. Kanwit's absolutely right,

18   he has been in and out of institutions for the majority of his

19   life, but we can't separate that entirely from what he has

20   endured in his life also.

21           I mean, the path is almost -- Mr. Kanwit describes it

22   as he never had a chance.  I think that's right.  I think the

23   path that he was on was almost inevitable starting out as early

24   as three, four, five years old.  I mean, reading those DSS

25   records and other records in this case was extremely difficult

1    to do.

2           I mean, some of the abuse that he sustained was as

3    horrific as one can imagine, and I'm not going to go through it

4    all here in the public record, it's in the sealed materials

5    that I filed with the Court, but, I mean, just to summarize, I

6    mean, sexually abused when he was six years old by his

7    grandfather, repeatedly physically abused, locked out of his

8    own home, gone without food, locked inside his own home,

9    effectively having no -- I mean, we talk about this all the

10   time in this court and in other cases about the lack of, you

11   know, parental guidance, well, there wasn't only a lack of

12   parental guidance in this case, there was an affirmatively bad

13   parental guidance in this case.

14          It wasn't simply an absentee father and absentee

15   mother, rather, it was a mother who affirmatively gave him

16   drugs and alcohol at a young age, it was a mother's boy friend

17   who affirmatively beat him and did things to him that are

18   beyond human.

19          And so from a very young age, he exhibits behavior

20   that's commensurate with what he's receiving.  The abuse leads

21   to psychological trauma.  He's 14 years old, and he's diagnosed

22   with PTSD.  I mean, at 14 years old.  What must someone have to

23   sustain to be at 14 years old and suffer from post-traumatic

24   stress disorder?  The abuse leads to his inability to have

25   lasting kind of meaningful relationships, and when you read the

1   records, and Dr. Mendoza touched on this in one particular

2   point, his therapist at an early age, and I hate to use the

3   word "therapist," but someone who performed a psychological

4   evaluation on him is a better way of putting it because it

5   wasn't a true therapist-patient relationship, it was simply

6   someone who he was ordered by the Court to have an evaluation,

7   says that he is simply looking for some sort of human contact,

8   some sort of meaningful human contact, and he's never received

9   it.

10          The abuse that he received leads to his drug

11   addiction, which leads to his criminality.  Now, I know that

12   that's an often told story when we come in here and we see

13   people like Mr. Lafata, but it is to such a degree and so

14   horrific that he truly didn't have an opportunity, he truly

15   didn't have a chance, and not just from the age of 10 or 11 or

16   12 but from three and four years old, and, you know, at the end

17   of the day after I read all that and I think about it, I say to

18   myself it's less surprising -- and this is, again, is not to

19   condone it, but it is less surprising that Mr. Lafata did the

20   things he did in terms of criminal behavior than it is, it is

21   that those people could treat another human being like that.

22          So I think, you know, there is that kind of tension

23   that Mr. Kanwit talks about, the tension between he's not

24   saveable, he's not worth our effort, he's not worth our time

25   versus, you know, for some sake, let's give him the one

1    opportunity, let's give him the one chance, and when the one

2    chance means nine years in prison, it's not as if we're saying

3    just let him out.  I mean, we're talking nine years, and I am

4    very respectful and happy that the government is recommending

5    ten.

6         I think that's a very big gesture, and it is

7    appreciated, and I obviously understand your Honor doesn't need

8    to follow that, too, but I do think that there comes a point

9    with Mr. Lafata where the stick has been used, literally, it

10   was used from age three, and it's been used up until now,

11   punishment, punishment, punishment, whether deserved or not.

12        Well, it's deserved here, it's deserved, but at a

13   certain point, he needs some help, and I think if there's one

14   silver lining that comes across this case, it's the fact that

15   he landed in federal court because honestly of all the places

16   to land, once he's done with the punishment aspect, we actually

17   have the resources to do what he needs to be done.

18        The probation department is very much involved in

19   cognitive behavioral therapy now.  It is one of the things that

20   Dr. Mendoza specifically cites that could be helpful to him,

21   and while I do think that Dr. Mendoza says some very important

22   things, he talks about him being psychologically intact, and he

23   talks about him having cognitive abilities and that with the

24   proper treatment, he actually has an opportunity to do well,

25   and a couple facts specifically about this case I think bear

1    that out.

2         After getting out on the last time, I think Mr. Lafata

3    finally decided enough, and he thought he could do it on his

4    own, he got a job, he maintained a period of sobriety.

5    Frankly, probably not a meaningful period of sobriety from the

6    perspective of the folks in this courtroom, but for him a very

7    meaningful period of sobriety, and he got a job, a job that not

8    only he was good at but that he liked.

9         Unfortunately, as is often the case, he got pulled

10   back in, back with his mother and his brother, who were using

11   drugs, and he starts to use drugs, and we end up here, but,

12   again, I think to his credit, he recognized that, and he turned

13   himself in.  He turned himself in on this case.  He walked into

14   the police station, and he said, "I understand you're looking

15   for me, I robbed a bank."  He confessed to that bank robbery,

16   he confessed to the second bank robbery.

17        So he understands right from wrong, he understands

18   that he can't do this on his own, and no one could do this on

19   his own, so I do think that a nine-year sentence with very

20   extensive treatment.  In fact, what I would suggest is perhaps

21   a nine-year sentence with the first year of supervised release

22   to be in some sort of inpatient program, not just the

23   Coolidge House because I don't think the Coolidge House is

24   effective.

25        I think we need some place suitable by probation where

1    he can get drug treatment, psychological counseling so when he

2    transitions, it's not just like it's always been, out of state

3    prison one day, living on the street the next, he needs a

4    transition period.

5          I think he absolutely needs that, and I think if we

6    put that into the mix here in terms of making it a condition of

7    his supervised release that that first year be in some sort of

8    an institutional setting outside of jail but some sort of drug

9    treatment, mental health treatment, inpatient for that period

10   of time, that will allow him to segue into the community in a

11   much more meaningful way.

12         And while incapacitating him certainly protects

13   society, I think in the long term, if we're going to protect

14   society and give him a chance, that that type of sentence makes

15   a lot of sense, and so that's what we'd be asking for, a

16   nine-year period of incarceration followed by I believe the

17   maximum term of supervision here is three years, if I'm not

18   mistaken, with that first year to be in placement in an

19   inpatient program.  Thank you.

20         THE COURT:  Mr. Lafata, you have the opportunity now

21   to make a statement, if you wish.  You don't have to if you

22   don't want to.

23         THE DEFENDANT:  I will.

24         THE COURT:  Okay.

25         THE DEFENDANT:  I'm a little nervous here.

1          MR. SINNIS:  Take your time.

2          THE DEFENDANT:  First off, I accept responsibility to

3    everything I pled guilty to, obviously.  From my record, it

4    obviously seems that, you know, me living on the outside world

5    is questionable.  I need help.  I'm getting older.  I got kids.

6    I don't want this, this ain't the life I asked for.

7          I just need help.  I have drug issues, I don't know

8    how to function out there like that.  I realize people that I

9    have in my life, my mother, my brother, they're not the best

10   for me.  I'm weak around them.  I just -- I need to learn other

11   ways to live life.  I don't want this to be it.  You know, my

12   kids are getting older.  I can make it.  I deserve better.  My

13   kids deserve a father.  You know, that's it, really, you know,

14   I'm here, I'm asking for help.

15         THE COURT:  Well, I think everybody has recognized the

16   significant features of the case.  There are different views as

17   to how those might be accommodated, but let me begin with one

18   of the observations Mr. Kanwit made, which is what struck me in

19   reading particularly the criminal history.

20         We often, we always, with varying degrees of emphasis,

21   take account of the statutory factor, which is the need to

22   protect the public from further offenses, and as I read this,

23   this struck me as one of the most vivid examples of the need to

24   recognize that factor.

25         I mean, this is an unrelenting criminal history, and

1    that speaks to the need for a significant punishment as

2    disablement, even apart from its role as punishment and

3    promoting respect for the law and general deterrence to others

4    and so on and so forth.

5          I mean, in this case, that factor, protecting the

6    public, emerged higher on the screen than I typically assess it

7    in many cases because I think some substantial rehabilitation

8    is necessary before we can feel secure that the defendant is

9    ready to live outside the institutions in the way that is not

10   threatening to the public.

11         I mean, an aspect of that is the variety of crimes

12   that are committed here, assault of one's but in fact another

13   bank robbery in the state that was prosecuted in the state

14   system, so I think that's a very important factor here, as, of

15   course, alluded to the nature and circumstances of these

16   particular offenses, putting people in fear with the threats of

17   violence and perhaps the ability and willingness to use

18   violence.

19         There's also no doubt on the other side of things that

20   this is a more disastrous life history than many we see.  We

21   see a lot of them, obviously, and we see a lot of common

22   patterns.  Mr. Lafata, not to put too fine a point on it,

23   essentially grew up wild, he was not civilized by his family,

24   and that has its continuing effects.  I would say that I think

25   that that is a better explainer of the juvenile and early adult

1    record than it is an explainer of the later adult record

2    because I think even given this strong disadvantage that

3    Mr. Lafata had, one would hope with age, growing in age, there

4    would be some ability to assume control of his own life and

5    make good decisions, so I don't think it is a complete excuse,

6    but it is a significant factor.

7         The effect of those kinds of experiences on

8    considerations for sentencing seem to me to fall in two areas.

9    One is the extent to which they may excuse, not excuse, reduce

10   an assessment of culpability so that, I mean, the guidelines

11   themselves talk about mental and emotional disturbances that

12   might affect the degree of culpability in some way.

13        And, as I say, I think that's true to some degree, but

14   I think it diminishes as you go through the 20's and the other

15   factor that assessing the life experience actually may cut in

16   the other way, it's the likelihood of recidivism, or,

17   alternatively, the likelihood of rehabilitation given an

18   appropriate sentence.

19        So the question is an assessment of how long it should

20   be for this process to take hold and for drug rehabilitation to

21   occur and social maturity to set in and job skills to be

22   developed, which is another factor in the statute.

23        I think the Sentencing Guideline range is not an

24   inappropriate one.  As a matter of fact, I think on this

25   record, if you took out the special factors of life experience,

1    this case would probably be a case for an upper end of the

2    guidelines range, so it could be that you could say that a

3    sentence at the low end was actually one that accommodated the

4    life experience, and I'd be inclined to do that except that in

5    this case I don't think I'm inclined to exceed the government's

6    recommendation.

7           I'm content that that's a sound one, and just as a

8    matter of policy, those cases in which I will go higher than

9    the government recommends will be few, although they exist, I

10   don't think this qualifies, so I think I will impose the

11   sentence that the government recommends.  I think ten years is

12   an appropriate sentence.  I am a little concerned that it is

13   not quite long enough.  I'm hopeful that the 30's are better

14   than the 20's for Mr. Lafata and he takes advantage of the

15   resources that he will have, and we'll see.

16          I'm not inclined at this point to adopt the suggestion

17   of a one-year residential program.  I just think it's too far

18   in the future to make that commitment.  I don't know whether

19   probation has a view on that.

20          PROBATION OFFICER:  If there was a need right at the

21   beginning for bringing the special condition, substance abuse

22   would cover that.

23          THE COURT:  It could be fashioned at the time if it

24   seemed appropriate.

25          PROBATION OFFICER:  Right.

1          THE COURT:  I think that's best.

2          All right.  Mr. Lafata, if you'd stand, please.  On

3   your conviction of these offenses and pursuant to the

4   Sentencing Reform Act of 1984, it is the judgment of the Court

5   that you be and you hereby are committed to the custody of the

6   Bureau of Prisons to be imprisoned for a term of 120 months.

7   This consists of equal terms of 120 months on each of the two

8   counts of conviction to be served concurrently.

9          I will recommend to the Bureau of Prisons that you be

10  considered for participation in the bureau's 500-hour

11  residential drug abuse treatment program as well as any

12  available mental health treatment programs.

13         Upon your release from imprisonment, you should be

14  placed on supervised release for a term of three years.  This

15  consists of terms of three years on each count, each term to

16  run consecutively.

17         Within 72 hours of your release from the custody of

18  the Bureau of Prisons, you shall report in person to the

19  district to which you have been released.

20         It is further ordered that you pay restitution in the

21  total sum of $4,150 to the First National Bank of Ipswich in

22  the amount of $2850 and Eastern Bank in Salem in the amount of

23  $1300.

24         Any payment that is made that is not a payment in full

25  shall be divided proportionately among the parties.  The

1    restitution is to be made in accordance with a schedule that

2    can be determined if it's not made in full at one time.

3         Payments are to be made to the clerk of this court to

4    transfer to the above-named victims.

5         You shall notify the United States Attorney of this

6    district within 30 days of any change of your mailing or

7    residential address that occurs while any portion of the

8    restitution remains unpaid.

9         While you're on supervised release, you should comply

10   with all the standard conditions that pertain to that status.

11   Those conditions are set forth in the United States Sentencing

12   Guidelines at Section 5D1.3C.  They are incorporated now by

13   reference but will be set forth at length in the judgment.

14        In addition to those standard conditions, you shall

15   comply with the following special conditions:

16        You shall not commit any other federal, state or local

17   crime.

18        You shall not illegally possess any controlled

19   substance.

20        You shall refrain from the unlawful use of a

21   controlled substance and shall submit to a drug test within 15

22   days of your release from imprisonment and at least two

23   periodic drug tests thereafter, not to exceed a total of 104

24   tests in any given calendar year.  All those may be directed by

25   your probation officer.

1          You shall submit to the collection of a DNA sample as

2     directed by the probation office.

3          You are prohibited from possessing a firearm,

4     destructive or other dangerous weapon.

5          It is a condition of your supervised release that you

6     pay restitution in accordance with the court-ordered repayment

7     schedule.

8          You are prohibited from incurring new credit charges

9     or opening additional lines of credit without the approval of

10    the probation office while any financial obligations remain

11    outstanding, and you are to provide the probation office with

12    any requested financial information, which information may be

13    shared with the financial litigation unit of the United States

14    Attorney's Office.

15         If directed to do so by the probation office during

16    your supervised release, you're to participate in any program

17    for substance abuse counseling or treatment, which may include

18    random drug testing, not to exceed a total of 104 tests per

19    year.

20         You are also to participate in any mental health

21    treatment or counseling program that you may be directed to by

22    the probation office.  In the case of any such program, you may

23    be required to contribute to the costs of services for such

24    treatment based on your availability to pay or the availability

25    of third-party payment.

1          I will not impose a monetary fine under the

2     circumstances as disclosed in the report, but there is a

3     mandatory assessment of $200, $100 for each count of

4     conviction, and that is due forthwith.

5          THE CLERK:  Joseph Lafata, you have a right to file an

6     appeal in this case.  Any appeal will expire within 10 days of

7     the sentence in this case.  If you cannot afford an attorney to

8     file an appeal on your behalf, the clerk of court will file an

9     appeal on your behalf.

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  The defendant stands committed

12     in the custody of the marshal.

13          THE CLERK:  All rise.  Court is in recess.

14          (Whereupon, the hearing was adjourned at

15     2:59 p.m.)

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT )

4    DISTRICT OF MASSACHUSETTS ) ss.

5    CITY OF BOSTON )

6

7              I do hereby certify that the foregoing transcript,

8    Pages 1 through 21 inclusive, was recorded by me

9    stenographically at the time and place aforesaid in Criminal

10   Action No. 09-10205-GAO, UNITED STATES OF AMERICA vs.

11   JOSEPH LAFATA and thereafter by me reduced to typewriting and

12   is a true and accurate record of the proceedings.

13              Dated this 26th day of July, 2016.

14

15                        s/s Valerie A. O'Hara

16              _____

17                   VALERIE A. O'HARA

18                   OFFICIAL COURT REPORTER

19

20

21

22

23

24

25